IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


C.S.A.,[1]

    Plaintiff,

v.                                            Case No. 18-2634-JWB

ANDREW M. SAUL,[2]
*Commissioner of Social Security,*

    Defendant.


**MEMORANDUM AND ORDER**

Plaintiff filed this action for review of a final decision of the Commissioner of Social Security denying Plaintiff's application for social security disability benefits under Title II of the Social Security Act, 42 U.S.C. § 401 et seq. The matter is fully briefed by the parties. (Docs. 11, 12, 13.) The Commissioner's decision is REVERSED and REMANDED for the reasons stated herein.

**I. Standard of Review**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The Commissioner's decision will be reviewed to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence as a

---

[1] Plaintiff's initials are used to protect privacy interests.
[2] Andrew M. Saul, sworn in as the Commissioner of Social Security on June 17, 2019, is automatically substituted as the Defendant pursuant to Fed. R. Civ. P. 25(d) and 42 U.S.C. § 405(g).

reasonable mind might accept as adequate to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. *Graham v. Sullivan*, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. *Glenn*, 21 F.3d at 984.

The Commissioner has established a five-step sequential evaluation process to determine disability. 20 C.F.R. § 404.1520; *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010). If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). At step two, the agency will find non-disability unless the claimant shows that he or she has a severe impairment. At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. *Id.* at 750-51. If the claimant's impairment does not meet or equal a listed impairment, the agency determines the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e). The RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. § 404.1520(a)(4); § 404.1520(f), (g). At step four, the agency must determine whether the claimant can perform previous work. If a claimant shows that she cannot perform the previous work, the fifth and final step requires the agency to consider vocational factors (the

claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. *Barnhart v. Thomas*, 540 U.S. 20, 25 (2003).

The claimant bears the burden of proof through step four of the analysis. *Blea v. Barnhart*, 466 F.3d 903, 907 (10th Cir. 2006). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. *Id.*; *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. *Thompson*, 987 F.2d at 1487.

**II. Background and Procedural History**

Plaintiff protectively filed an application for disability insurance benefits on October 15, 2015, alleging a disability onset date of April 5, 2013, when she was 26 years of age. (R. at 15, 52.) Prior to the alleged onset date, Plaintiff held several jobs, most of which were in customer service. (R. at 184.)

Plaintiff's claims were administratively denied, prompting her to request a hearing before an Administrative Law Judge (ALJ). On October 30, 2017, Plaintiff testified at a hearing before ALJ Michael Comisky, in Topeka, Kansas. (R. at 27.) Vocational expert Douglas C. Lindahl, appearing by telephone, also testified at the hearing. (R. at 44.) On January 4, 2018, the ALJ issued a written decision unfavorable to Plaintiff. (R. at 15-22.) Plaintiff's appeal of the ALJ ruling was denied by the Appeals Council, making the ALJ's ruling the Commissioner's final decision. (R. at 1.)

At step one, the ALJ found Plaintiff had not been engaged in substantial gainful activity since the alleged onset date of April 5, 2013. (R. at 17.) At step two, the ALJ found Plaintiff has the following severe impairments: spine disorder, fractures, and some apparent alcohol abuse. (*Id.*)

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (R. at 18.)

The ALJ determined that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b). He found she can carry 20 pounds occasionally and 10 pounds frequently; can stand or walk for 6 hours in an 8-hour workday; can push and pull within the limits for lifting and carrying; can frequently climb ramps and stairs and occasionally climb ladders, ropes, or scaffolds; and can balance frequently as well as stoop, kneel, and crouch. (R. at 18.) In making these findings, the ALJ acknowledged that Plaintiff has significant physical problems, having had a motorcycle accident in August 2011 in which she suffered numerous fractures, including an ankle, left lower ribs, and a burst fracture in her lumbar spine. (R. at 18.) Plaintiff's extensive follow-up treatment included surgery in September of 2011 to stabilize her spine with placement of screws and rods involving the T9-10, T12, and L12 vertebrae. (R. at 506.) The ALJ noted Plaintiff complained of continued back pain through 2014 and 2015 and was diagnosed with degenerative joint disease, thoracic spinal stenosis, thoracic radiculopathy, and thoracic post-laminectomy, and was subsequently prescribed medications, epidural injections, and physical therapy to manage pain. Although treatment provided some relief, Plaintiff reported chronic pain and physical restriction due to back pain, and her condition was exacerbated in March 2015 when she had another motorcycle accident. (R. at 18.)

In formulating the RFC, the ALJ considered the opinion of John May, M.D., a consulting physician who reviewed records and opined in April 2016 that although Plaintiff had some limitations and deficits in lifting and carrying, she could perform a range of work in the light exertional category. (R. at 19.) The ALJ also considered the opinion of Dawood Sayed, M.D., Plaintiff's treating physician, who opined that Plaintiff's thoracic pain was severely limiting and

made it difficult for Plaintiff to stand, walk, lift, or bend, such that she had too much pain and fatigue to work. (*Id.*) The ALJ gave greater weight to Dr. May's opinion, saying he "cited more evidence in his evaluation and provided a rationale based upon this evidence to support his finding." (*Id.*) The ALJ found that Dr. Sayed provided little support for his findings, relied heavily on Plaintiff's subjective complaints of pain, and did not consider the improvement Plaintiff received from treatment. The ALJ further discussed Plaintiff's subjective complaints as follows:

> The undersigned also finds it counterintuitive for the claimant to become pregnant in 2016 when she reportedly had debilitating by [sic] pain, including debilitating back pain. The claimant, however, did become pregnant and birthed a baby girl in November 2016. * * * Since the birth, the claimant has continued to complain of fatigue and thoracic pain …, but the claimant having child [sic] raises questions about the degree of pain and limitation she was actually experiencing over the years.
>
> The claimant, as discussed, indicates that she is struggling with pain. She also testified that she needs a sit/stand option and that she can do little physically because of her condition. The claimant, at the hearing, however, did not need to stand, although the undersigned gave her that option. She also did not squirm in her chair or appear uncomfortable while sitting. Additionally, the claimant lifted her 11-month-old child during the hearing to change her diapers. The claimant had no difficulty do [sic] this despite the fact that her child clearly weighed well over 10 pounds. The claimant also testified at the hearing that she does most of the cooking in the house as well as most of the lifting. She also takes care of newborn baby [sic], which is a significant chore.

(R. at 19-20.) The ALJ further found Plaintiff had "downplayed" her second motorcycle accident, which was "more serious" than she indicated and which occurred after the alleged onset date, and said "driving around on a motorcycle appears incongruent with her complains [sic] of debilitating pain and disability during this period." (R. at 20.) The ALJ said treatment and medication have helped Plaintiff and "the claimant's pregnancy; the current raising of her newborn; and her activities of daily living show her to be more capable than she now alleges." (*Id.*) The ALJ said he considered all the evidence but placed "special emphasis" on Dr. May's opinion, the motorcycle

5

crash report, Dr. Jackson's orthopedic follow-up notes, emergency room notes, and Plaintiff's "capacity concerning lifting of her baby and activities of daily living." (*Id.*)

At step four, the ALJ found Plaintiff was capable of performing her past relevant work of customer service representative, telephone sales representative, apparel sales representative, and technical support worker. The ALJ proceeded to find at step five that Plaintiff was capable of performing other jobs that exist in significant numbers in the national economy, including router, copy machine operator, and collator operator. (R. at 21.) These findings were based in part on the testimony of the vocational expert. (R. at 20-21.)

**III. Analysis**

1. <u>RFC determination</u>. Plaintiff contends the RFC is unsupported by substantial evidence in part because the ALJ "misrepresented the facts in the decision." (Doc. 11 at 12.) Plaintiff notes the ALJ relied upon an alleged observation that Plaintiff lifted her child and changed a diaper at the evidentiary hearing, which Plaintiff asserts was "an absolute fabrication" because the child was not present at the hearing. (*Id.*) Plaintiff also argues the ALJ improperly focused upon Plaintiff's pregnancy and employed "sit and squirm jurisprudence" by finding Plaintiff's comportment during the hearing refuted her complaints of pain. Plaintiff further contends the ALJ improperly rejected the opinion of her treating physician, a pain specialist who treated Plaintiff over an extended period of time, in favor of a state agency physician who was not a specialist, who had not examined Plaintiff, and whose opinion was issued without review of all the medical records. (*Id.* at 13-14.)

The ALJ's description of a supposed diaper change during the evidentiary hearing is problematic. The transcript of the October 30, 2017, hearing indicates that the hearing commenced at 8:31 a.m. and concluded without any breaks at 9:02 a.m. (R. at 27-48.) Nothing in the record supports the ALJ's statement that Plaintiff lifted her child up and changed a diaper during the

hearing. In fact, the transcript of Plaintiff's testimony indicates that Plaintiff's child - her only child - was not present at the hearing:

    [BY THE ATTORNEY]

Q. How much can you lift when your ribs are not flared?

A. I'd say 10 to 15 pounds at the most. That's stretching it.

Q. I understand *that you have a child at home* –

A. Yes.

Q. – is that right? Can you lift your child?

A. I usually only lift her when I got to change her diaper, and that's – she walks in her walker to the bedroom, and I lift her up from the walker, put her on the bed, change and put her back in her walker. My husband usually does that when he's home during the day since he works night shift, or he'll usually put her in the playpen, and do most of the lifting for me.

    BY THE ADMINISTRATIVE LAW JUDGE:

Q. How old is your daughter?

A. Eleven months.

    BY THE ATTORNEY:

Q. I believe you indicated that your husband works the night shift?

A. Yes.

Q. Who is it that does most of the care for the child such as diaper changing, feeding, getting baths, those kinds of things?

A. He does most of the lifting now and I change her diaper as long as she's on the bed, but he usually does everything.

Q. What about the household chores, who takes care of the home?

A. We both do, depending on how I'm feeling. He'll bring the laundry up the stairs to me, and I will fold them and put them away. Everything that I put the – like put the clothes away is usually level with me so there's no bending, twisting, lifting, or high stretching or anything like that. I do dishes about 20 minutes. If I start to feel a little tired, or my back starts to hurt, then I stop and sit down for [a while], probably about 30 to 40 minutes, sometimes an hour, depending on how I'm

7

> feeling. Meals, I usually cook them, depending on how I'm feeling that day. If I am having a really bad day, then he usually goes and will cook something or go get take-out. And [that] makes it easy for me, easier for me so I don't have to do anything. It's just a combination of both of us I guess you could say.

R. at 41-42 (italics added). In his written decision, the ALJ later found:

> [T]he claimant lifted her 11-month old child during the hearing to change her diapers. The claimant had no difficulty do[ing] this despite the fact that her child clearly weighed well over 10 pounds. The claimant also testified at the hearing that she does most of the cooking in the house as well as most of the lifting. She also takes care of [a] newborn baby, which is a significant chore.

R. at 19-20.

Factual findings of an ALJ are conclusive if they are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The above findings are not supported by substantial evidence. The record indicates Plaintiff merely testified about changing her child's diaper, but by the time of the written decision – over two months later -- the ALJ thought he recollected having seen a diaper change at the hearing. The Commissioner says it is "unclear from the record whether [the] baby was at the hearing," and that it is "irrelevant" in any event because Plaintiff testified "she could lift 10 to 15 pounds … and that she cared for her baby, including lifting the baby to change her diaper." (Doc. 12 at 7) (internal quotation marks omitted.) This argument is not persuasive. As noted above, the record indicates the child was not present at the hearing. Despite that, the ALJ recounted seeing Plaintiff lift a child with "no difficulty" that "clearly weighed well over 10 pounds." Such vivid recollections, which were cited by the ALJ as a basis for discounting Plaintiff's complaints of debilitating back pain, appear to be faulty recollections with no basis in the evidence.[3] On top of that, the ALJ concluded Plaintiff does "most

---

[3] While it is not beyond the realm of possibility that the ALJ witnessed Plaintiff changing the child's diaper at the hearing, all indications in the record - save for the ALJ's assertion in his order – suggest it did not occur. Among the circumstances supporting that conclusion - aside from the somewhat improbable nature of the act itself - are the fact that the hearing was a brief one with no apparent breaks; the ALJ made no contemporaneous comments or findings about the child or about having seen Plaintiff lift the child to change a diaper; and the testimony recounting that

8

of the lifting" at home, when her testimony was directly to the contrary. The ALJ also implied that Plaintiff engaged in extensive physical tasks in "tak[ing] care of [a] newborn baby," when Plaintiff's testimony indicated that her husband performed most of the physically demanding tasks of child-rearing. It is true Plaintiff testified she could lift 10-15 pounds, that she could sometimes lift her child from a walker to a bed for a diaper change, and that she usually cooked the meals at home. But otherwise, none of the foregoing findings by the ALJ are supported by substantial evidence.

This error was compounded by the ALJ's reliance on the fact of Plaintiff's pregnancy as somehow discrediting her complaints of pain – although the ALJ elsewhere found that Plaintiff's pain was serious and genuine. The ALJ said it was "counterintuitive" for Plaintiff to become pregnant in 2016 when she reportedly had debilitating pain. (R. at 19.) This is simply a non sequitur. Having a child does not reasonably imply anything about the severity of Plaintiff's back pain or whether it prevents her from performing the demands of a full-time job. *See Tilton v. Colvin,* 184 F. Supp. 3d 135, 146 (M.D. Pa. 2016) ("The undersigned agrees with other Courts that the mere fact that a claimant is able to become pregnant and bear children does not contradict disability"); *Danlovich v. Colvin,* No. 15-196, 2016 WL 491723, at *3 (W.D. Pa. Feb. 9, 2016) (ability to become pregnant and bear a child "has no bearing in this case on whether Plaintiff had a disability" and "is irrelevant and should have no negative impact on Plaintiff's credibility.") Reliance upon an irrelevant factor in evaluating symptoms is contrary to the regulations. SSR 16-3P, 2017 WL 5180304, at *10 (Oct. 25, 2017) ("Adjudicators must limit their evaluation to the individual's statements about his or her symptoms and the evidence in the record that is relevant to the individual's impairments.")

---

Plaintiff had a child "at home" whose diaper she changed. On this record, the court is left with the definite and firm impression that the ALJ's finding was a good-faith mistake that was based upon a misrecollection.

The ALJ additionally discounted Plaintiff's claimed limitations because she had had a second motorcycle accident after the alleged disability date and "driving around on a motorcycle appears incongruent with her complains [sic] of back pain." (R. at 20.) Plaintiff testified at the hearing that she periodically had good days but also had a "pinched nerve" that at times "basically seizes up" and "drops me to the ground," forcing her to go to the doctor for an injection or muscle relaxers, which help but don't take away the pain. (R. at 39-41.) In answer to the ALJ's questions, Plaintiff testified she was not feeling bad the day of the second accident and decided to ride down to the park, with her husband on the back, when the motorcycle slipped on some gravel. (R. at 38.) The ALJ did not explain how driving a motorcycle was inconsistent with Plaintiff's claimed symptoms or her alleged inability to work forty hours a week on a sustained basis. *Cf.* SSR 16-3P, 2017 WL 518034, at *10 ("The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms."); SSR 96-8P, 1996 WL 374184, at *2 (July 2, 1996) (RFC is the maximum remaining ability "to do sustained work activities … on a **regular and continuing** basis, and the RFC must include a discussion of the individual's abilities on that basis"; regular and continuing "means 8 hours a day, for 5 days a week" or its equivalent) (bold in original).

The ALJ also improperly concluded that Plaintiff's comportment at the hearing showed her back pain was not as severe as she claimed. While an ALJ is entitled to consider a claimant's demeanor, "[t]he regulations do not allow the ALJ to substitute his opinion for a medical opinion." *Bibbs v. Apfel*, 3 F. App'x 759, 761–62 (10th Cir. 2001). This means, in part, the ALJ must not create his own criteria for measuring pain. *See Coley v. Comm'r of Soc. Sec.*, ___F. App'x ___, 2019 WL 1975989, at *3 (11th Cir. May 3, 2019) (citations omitted.) The ALJ apparently did so

10

here, concluding Plaintiff's pain was not disabling in part because she "did not squirm in her chair or appear uncomfortable while sitting." (R. at 19.) An ALJ is not trained to evaluate pain in this manner, and no medical evidence is cited to show that a claimant's ability to sit for a 31-minute evidentiary hearing indicates the individual does not suffer from severe back pain or is able to work full-time on a sustained basis.

The ALJ thus relied upon a series of unsupported, improper, or irrelevant factors in concluding that "the claimant is not fully persuasive in this case and … she can perform work at the above [RFC]." (R. at 20.) The ALJ added in summation that in determining the RFC, he placed "special emphasis" on five items, one of which was Plaintiff's "capacity concerning lifting of her baby and activities of daily living." (R. at 20.) The reliance on an incident that apparently did not occur (Plaintiff's lifting of the baby at the hearing) would be enough in any case to cause concern over the reliability of the ultimate conclusion, but here the concern is amplified because the ALJ stated that he placed special emphasis on it. And as noted above, the ALJ also relied on other unsupported or irrelevant factors in assessing Plaintiff's persuasiveness about the level of pain she experienced. All of the foregoing formed a significant part of the ALJ's assessment of Plaintiff's subjective complaints of pain and her resulting limitations. Under the circumstances, a remand for reconsideration of the claim without the improper factors is the appropriate remedy. *See Romero v. Apfel*, 221 F.3d 1352 (Table), 2000 WL 985853, at *4 (10th Cir. July 18, 2000) ("Because a credibility assessment requires consideration of all the [pertinent] factors 'in combination,' ... when several of the factors relied upon by the ALJ are found to be unsupported or contradicted by the record, this court is precluded from weighing the remaining factors to determine whether they, by themselves, are sufficient to support the ALJ's credibility

11

determination.") (citing *Robinson v. Apfel*, No. 98-5073, 1999 WL 74025, at * *3 (10th Cir. Feb. 17, 1999) and *Huston v. Bowen*, 838 F .2d 1125, 1132 n. 7 (10th Cir.1988)).

This finding makes it unnecessary for the court to consider whether the ALJ erred in assessing the opinion of Plaintiff's treating physician, as that opinion may be reconsidered by the ALJ on remand in light of any other findings. The court notes that the ALJ did not properly consider all of the medical opinions in this case. As the Commissioner points out, the record contains three medical source opinions (*see* Doc. 12 at 4), yet the ALJ only considered two of those opinions. On remand, the ALJ should consider all of the medical opinions in the record. *See* 20 C.F.R. § 404.1527(c) ("Regardless of its source, we will evaluate every medical opinion we receive.")

The court recognizes that ALJs face a difficult task. The ALJ in this case noted as much, informing Plaintiff at the hearing that it would take several months to issue a decision because the agency was "so far behind" and "[t]here's just not enough of us…." (R. at 48.) That delay and the pressure to issue a decision may have contributed to the error in this case. Nevertheless, the claim must be adjudicated according to the standards established by Congress and the Commissioner. Nothing in the court's opinion or in the act of remanding is intended to suggest any particular outcome on Plaintiff's application.

## IV. Conclusion

The Commissioner's decision is REVERSED and REMANDED. The case is remanded pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings in accordance with this Memorandum and Order. IT IS SO ORDERED this 20th day of June, 2019.

            _____s/ John W. Broomes_____
            JOHN W. BROOMES
            UNITED STATES DISTRICT JUDGE